UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION at ASHLAND**

|  |  |
|---|---|
| JAMES K. BLAIR | ) |
|     Plaintiff, | ) Civil Action No. |
| | ) 0:15-cv-52-JMH |
| v. | ) |
| | ) **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
|     Defendant. | ) |

\*\*\*

This matter is before the Court on the parties' cross-motions for summary judgment [DE 13 and 14] on Plaintiff's appeal of the Commissioner's denial of his application for disability insurance benefits and supplemental security income. [Tr. 31-47].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion and grant Defendant's motion.

**I. Overview of the Process and the Instant Matter**

In determining disability under the Social Security Act, the Administrative Law Judge ("ALJ"), conducts a five-step analysis:

1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

---

[1] These are not traditional Rule 56 summary judgment motions. Rather, they are procedural devices by which the parties bring the administrative record before the Court.

2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the case at bar, the ALJ concluded the Plaintiff had not engaged in substantial activity since October 1, 2012, thus satisfying step one. [Tr. 36]. Under step two, the ALJ found the Plaintiff had the following severe impairments: major depressive disorder, atrial fibrillation, nonischemic dilated cardiomyopathy,

2

canal stenosis, degenerative disc disease, and obesity. [Tr. 36]; 20 CFR 404.1520(c), 416.920(c). In regards to step three, the ALJ determined that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. [Tr. 37-39].

At step four the ALJ concluded the Plaintiff had a residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), subject to certain stipulations. [Tr. 39]. First, the Plaintiff could only stand four hours out of an eight-hour workday and never climb ladders, ropes, or scaffolds. [Tr. 39]. Second, Plaintiff could occasionally climb ramps and stairs and frequently stoop, kneel, crouch, or crawl. [Tr. 39]. Third, Plaintiff should have no exposure to heights and avoid concentrated exposure to moving machinery, hazards, and temperature extremes. [Tr. 39]. Fourth, Plaintiff would be afflicted with chronic pain noticeable to himself at all times but could maintain attention and concentration in two-hour increments with normal morning, lunch, and afternoon breaks. [Tr. 39]. Fifth, the job would have to be of a simple nature, not a complex or detailed job, and should be low or non-stress with no strict production quotas. [Tr. 39]. Further, the ALJ found that the Plaintiff was unable to perform any past relevant work as a flooring installer. [Tr. 45].

Under step five, and considering the Plaintiff's age, education, work experience, and RFC, the ALJ opined that there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform. [Tr. 45].

## II. Standard of Review

In reviewing the ALJ's decision to deny disability insurance benefits and supplemental security income, the Court may "not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir.1994) (citations omitted). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir.2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F .2d 211, 213 (6th Cir.1986). Substantial evidence review relies upon the following inquiry: Did the ALJ use "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"? *Taskila v. Commr. of Soc. Sec.*, 15-2224, 2016 WL 1533996, at *2 (6th Cir. Apr. 15, 2016) (citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

## III. Background

On April 18, 2014, Plaintiff filed a Title II application for disability and disability insurance benefits in addition to a Title XVI application for supplemental security income. [Tr. 249; 255]. The alleged injury onset date is October 1, 2012. Plaintiff is currently 40 years old and was 36 years old at the date of the alleged injury. [Tr. 93). Plaintiff dropped out of high school after completing the eighth grade [Tr. 353] and despite multiple attempts, was unable to pass the GED exam. [Tr. 86]. After his early departure from high school, Plaintiff began working as a manual laborer installing flooring. [Tr. 73]. Plaintiff performed this work for a period of approximately 12 years. [Tr. 73].

Plaintiff claims that he has become disabled and unable to work due to a combination of physical and mental ailments. [Tr. 93-94]. In particular, Plaintiff states he suffers from congestive heart failure, leaky valves, atrial fibrillation, high blood pressure, back problems, depression, and memory problems. [Tr. 93-94].

Plaintiff's claims were denied initially and again upon reconsideration. [Tr. 158; 172]. Plaintiff requested a hearing, which took place on February 24, 2015. [Tr. 91]. The ALJ heard testimony from the Plaintiff, a vocational expert ("VE"), and two medical experts. [Tr. 52]. The VE, Dr. Anthony T. Michael Jr. ("Dr. Michael"), testified that although Plaintiff could no longer

5

perform his prior job as a flooring installer, he could perform other jobs that exist in the national economy. [Tr. 89].

After considering all of the evidence in the administrative record, including the testimony of the Plaintiff, VE, and medical experts, the ALJ issued an unfavorable decision denying disability insurance benefits on April 8, 2015. [Tr. 47]. The Appeals Council denied Plaintiff's request for review on June 22, 2015. [Tr. 1]. Plaintiff has exhausted his administrative remedies and this case ripe for review pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3).

## IV. Analysis

Plaintiff argues that the ALJ committed errors by (1) by not giving controlling weight to the opinions or Dr. Emily Skaggs and Dr. John VanDeren; (2) by giving great weight to the opinion of Dr. Alexander; (3) in its credibility determination of the Plaintiff; and (4) by finding that Plaintiff could perform work that exists in significant numbers in the national economy.

**(A) The ALJ did not err in assigning no weight to the opinion of Dr. Emily Skaggs and little weight to the opinion of Dr. John VanDeren.**

Dr. Emily Skaggs evaluated the Plaintiff on August 11, 2014. [Tr. 353]. Dr. Skaggs diagnosed the Plaintiff with a "Major Depressive Disorder, Severe." [Tr. 355]. Specifically, Dr. Skaggs noted limitations with the Plaintiff's memory and ability to tolerate stress within the confines of a work environment. [Tr. 356]. The ALJ assigned this opinion no weight because it was "not

6

supported by the objective findings including the narrative report." [Tr. 44]. Plaintiff argues that the ALJ erred in failing to give Dr. Skagg's opinion controlling weight.

Dr. John VanDeren evaluated the Plaintiff in February of 2015. [Tr. 854]. Dr. VanDeren concluded that given his heart problems, Plaintiff was incapable of tolerating low levels of work stress. [Tr. 832]. Dr. VanDeren further noted several limitations to the Plaintiff's ability to function in a work setting. [Tr. 834-36]. Specifically, Dr. VanDeren concluded that the Plaintiff would require unscheduled breaks and would need to avoid extreme conditions. [Tr. 835]. Further, the Plaintiff and would need to be afforded more than four absences per month. [Tr. 835]. The ALJ gave little weight to this opinion because it was not supported by treatment notes. [Tr. 43]. Plaintiff argues that the ALJ erred in failing to give Dr. VanDeren's opinion controlling weight.

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.' " *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004) (quoting 20 C.F.R. § 404.1527(c)(2)). The ALJ may decide not to assign controlling weight to a treating source, but in so doing must provide specific reasons. *Id.*

7

Here, the ALJ provided specific reasoning for not assigning controlling weight to Dr. Skagg's opinion that the Plaintiff had "marked" limitations in his memory, ability to carry out simple tasks, and tolerate the stress of a typical work day. [Tr. 356]. This determination is supported by substantial evidence. The record reveals that the Plaintiff neither receives treatment nor takes medication for mental health impairments, and that Dr. Skaggs did not actually evaluate Plaintiff (a licensed psychological practitioner in her office did). [Tr. 44; 356; 416-756]. Therefore, the Court finds that the ALJ did not err in assigning no weight to the opinion of Plaintiff's treating physician, Dr. Skaggs.

In addition, the ALJ gave specific reasoning for assigning limited weight to the opinion of Dr. VanDeren. [Tr. 43]. The ALJ noted he "considered in part" the limits Dr. VanDeren noted. The ALJ cites a lack of sufficient objective findings within the attached notes of Dr. VanDeren's medical report regarding the Plaintiff. [Tr. 43]. This Court agrees that Dr. VanDeren's report fails to establish a rational connection between Plaintiff's medical history and a finding that the Plaintiff is entirely incapable of performing even low stress work. Therefore, the Court finds that the ALJ did not err in assigning little weight to the opinion of Plaintiff's treating physician, Dr. VanDeren.

  (B)   **The ALJ did not err in assigning great weight to the opinion of Dr. Hayden Alexander.**

Dr. Hayden Alexander reviewed the medical history of the Plaintiff prior to the February 24, 2015 hearing. [Tr. 62-67]. During the hearing, Dr. Alexander gave a detailed synopsis of the Plaintiff's medical complications followed by an opinion regarding the Plaintiff's work capacity and limitations. [Tr. 62-67]. Specifically, Dr. Alexander opined that the Plaintiff's heart problems were controllable when he took his medicine. [Tr. 65]. Based on a scenario in which the Plaintiff was taking his medications as prescribed, Dr. Alexander applied a RFC which included several limitations that were later echoed in the ALJ's final decision. [Tr. 66]. The ALJ gave great weight to the opinion of Dr. Alexander because he gave an adequate explanation and his findings were buttressed by the medical record as a whole. [Tr. 44]. Plaintiff argues that the ALJ erroneously gave great weight to the opinion of Dr. Alexander because he did not treat the Plaintiff and is not himself a cardiologist.

Nontreating and nonexamining sources are weighed based on the examining relationship, specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. *Gayheart v. Commr. of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* Since the opinions

of Dr. Skaggs and Dr. VanDeren were not deemed controlling, the legal standard cited in *Gayheart* controls the analysis.

Although not a cardiologist, Dr. Hayden is well-versed in reading cardiac related reports. During his medical residency Dr. Hayden trained with cardiologist Dr. Tinsley Randolph Harrison [Tr. 63]. Dr. Alexander has testified on numerous occasions with regards to claimants with heart complications. [Tr. 63]. Most importantly, Dr. Alexander's testimony is consistent with the record as a whole. The Plaintiff's medical record suggests that his failure to take medication has on multiple occasions caused atrial fibrillation episodes and other irregular cardiac activity. [Tr. 416-756]. Conversely, the record shows that when the Plaintiff employs a regular medication regimen, his ejection fraction numbers are normal. [Tr. 416-756]. The Court finds the ALJ's decision to assign great weight to the opinion of Dr. Alexander was supported by substantial evidence.

    **(C) The ALJ did not error in finding that the Plaintiff is not fully credible.**

The ALJ found that the Plaintiff suffers from legitimate medical ailments. [Tr. 40] The ALJ concluded, however, that the Plaintiff's statements regarding the intensity, persistence, and limiting effects of these ailments were not credible. [Tr. 40].

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the

claimant." *Rogers v. Commr. of Soc. Sec.*, 486 F.3d 234, 247-48 (6th Cir. 2007). "Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints 'based on a consideration of the entire case record.'" *Id.* Lastly, inconsistency in the record, although not fatal, tends to discredit the assertions of the claimant. *Id.* at 248.

In finding the Plaintiff not fully credible, the ALJ pointed to particular discrepancies between the Plaintiff's alleged limitations and facts contained in the record. [Tr. 41-45]. First, Plaintiff's October 21, 2014 emergency room visit purportedly resulted from the Plaintiff mishandling sheetrock. [Tr. 42; 756]. This fact, the ALJ noted, "suggests [Plaintiff] is certainly not as limited as alleged." [Tr. 42]. Second, the ALJ concluded that the Plaintiff's own account of his daily activities support the notion that he functions "fairly well." [Tr. 42]. Specifically, the ALJ stated that the Plaintiff plays cards, reads, and uses Facebook. [Tr. 42]. Moreover, not only does the Plaintiff perform these activities, but by his own admission, does them well. [Tr. 42]. The ALJ noted that these activities, paired with several others, suggest that the Plaintiff's limitations regarding his memory and ability to follow instructions are not as severe as he contends. [Tr. 42]. Third, the ALJ opined that because the

11

Plaintiff does not receive any treatment or medication for psychological disorders, it is likely that he is not as psychologically limited as alleged. [Tr. 43].

The ALJ appropriately considered the discrepancies between the record and Plaintiff's assertions regarding the intensity, persistence, and limiting effects of his ailments. Based on his assessment, the ALJ found the Plaintiff not fully credible and gave an adequate explanation for his determination. The Court finds the ALJ's credibility determination of the Plaintiff was supported by substantial evidence.

**(D) The ALJ did not err in concluding that Plaintiff could perform work that exists in significant numbers in the national economy.**

This Court reviews the ALJ's finding that the Plaintiff, with certain limitations[2], has the RFC capacity as defined in 20 CFR 404.1567(b) and 416.967(b). Further, the Court reviews the ALJ's conclusion that the RFC attributed to the Plaintiff renders him able to perform the following types of jobs: inspector, light

---

[2] "After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he could only stand 4 hours out of an 8-hour workday and never climb ladders, ropes, or scaffolds. He may occasionally climb ramps and stairs and frequently stoop, kneel, crouch, or crawl. The claimant should have no exposure to heights and avoid concentrated exposure to moving machinery, hazards, and temperature extremes. He would be afflicted with chronic pain noticeable to himself at all times but could maintain attention and concentration in two-hour increments with normal morning, lunch, and afternoon breaks. The job would have to be of a simple nature not complex or detailed job and should be low or non-stress with no production quotas." [Tr. 39].

exertion; garment bagger, light exertion; and assembler, light exertion. [Tr. 46].

In deciding an appropriate RFC for the Plaintiff, the ALJ relied upon the opinions of Dr. Alexander, Dr. Gedmark, and Dr. Reed. [Tr. 43-44]. After reviewing the Plaintiff's comprehensive medical history, Dr. Alexander concluded that the Plaintiff could perform light work. [Tr. 62-66]. Dr. Alexander listed limitations to Plaintiff's day-to-day capabilities within a hypothetical work setting. [Tr. 66]. Dr. Gedmark and Dr. Reed are both state agency medical consultants. [Tr. 44]. On July 1, 2014, Dr. Gedmark filled out a physical assessment form in which he concluded the Plaintiff could perform light work. [Tr. 100-102]. In addition, Dr. Gedmark listed exertional, postural, and environmental limitations. [Tr. 100-102]. Dr. Reed affirmed the determination of Dr. Gedmark on September 17, 2014. [Tr. 130-33]. The ALJ gave great weight to the opinions of Dr. Gedmark and Dr. Reed citing adequate explanations and consistency with Dr. Alexander's conclusions. [Tr. 44].

Based the on the RFC and the limitations suggested by the medical experts, the VE, Dr. Michael, concluded that there would be opportunities for the Plaintiff to engage in substantial gainful activity. [Tr. 89]. The VE provided three examples of jobs that the Plaintiff could perform with his medical diagnosis and limitations. [Tr. 89]. First, Dr. Michael opined the Plaintiff could perform work as an inspector. [Tr. 89]. Dr. Michael noted

13

that there are 66,000 such positions in the nation and 5,000 in the immediate region. [Tr. 89]. Second, Dr. Michael opined that the Plaintiff could obtain employment as a garment bagger at the light level. [Tr. 89]. Data indicated there are 10,000 garment baggers in the nation and 1,000 in the region. [Tr. 89]. Lastly, Dr. Michael suggested that the Plaintiff could find work as an assembler. [Tr. 90]. Dr. Michael stated that there are 39,000 such positions in the nation; 2,500 of which work in the region. [Tr. 90].

The ALJ is not bound by any particular medical opinion and should base a claimant's RFC on "all of the relevant medical and other evidence." *Paul v. Astrue*, 827 F. Supp. 2d 739, 745 (E.D. Ky. 2011) (quoting 20 C.F.R. § 404.1545). Further, "[T]he testimony of a VE is the preferred method of evaluating whether a claimant is capable of returning to past relevant work or making a successful adjustment to other work found in significant numbers in the national economy." *Clubb v. Astrue*, 3:06-CV-72-KKC, 2008 WL 131202, at *3 (E.D. Ky. Jan. 11, 2008).

The ALJ relied on the opinions of three medical experts in attributing an RFC to the Plaintiff: Dr. Alexander, Dr. Gedmark, and Dr. Reed. [Tr. 31-47]. These opinions are rooted in experience, supported by evidence and explanation, and reflect the record as a whole. In addition, the ALJ relied upon the testimony of the VE, Dr. Michael, to conclude that Plaintiff could perform work

14

that exists in significant numbers in the national economy. [Tr. 31-47]. Dr. Michael's testimony was supported by data and there was no objection in terms of his credibility. The ALJ's findings were supported by substantial evidence and consistent with the record; therefore, the Court finds that the ALJ did not err in concluding that there are jobs that exist in significant numbers in the national economy that Plaintiff.

## V. Conclusion

Accordingly, for the foregoing reasons, **IT IS ORDERED**:

(1) that Plaintiff's Motion for Summary Judgment [DE 13] be, and the same hereby is, **DENIED**; and

(2) that Defendant's Motion for Summary Judgment [DE 14] be, and the same hereby is, **GRANTED**.

This the 19th day of August, 2016.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge